This is Case No. 12-133, American Express v. Italian Colors Restaurant. Mr. Kellogg. Thank you, Mr. Chief Justice, and may it please the Court. The Court below thrice refused to enforce the party's arbitration agreement because he thought that class procedures were necessary to vindicate the plaintiff's Sherman Act claims. That holding was a reversible error for at least three reasons. First, it has no basis in either the FAA or the Sherman Act. Second, it creates an unworkable threshold inquiry. And third, it is unnecessary to any legitimate policy concerns raised by the Court below. Mr. Kellogg, suppose it goes to arbitration, as you think it should, and the arbitrator says to the merchant, to prove your case, you have to show the relevant market, you have to show that American Express had market power, it used that power to the detriment of its competitors, and the way these sections, the way these tying cases have gone is you get an expert and I don't see that you can prove it in a new way. I mean, the whole point of this is that the expense to win one of these cases is enormous and no single person is not worth that person's while. Three responses to that, Your Honor. The first is that it is up to the arbitrator in the first instance to devise procedures to deal with claims in an efficient and cost-effective manner. Second, to the extent that an expert report is required that would cost a lot of money, we have conceded below that the parties could share costs of that expert just as they could share the costs of a lawyer. And third, the alternative is to have an inquiry up front that this Court has rejected in Concepcion that you cannot condition the enforcement of an arbitration agreement on the availability of class procedures. It's ugly. Ginsburg. What was the — I missed that. The sharing of the costs, how does that work? It's certainly not in the agreement, not in the arbitration agreement, that American Express is going to pay for the expert for the other side. We acknowledge below that they could share costs among multiple plaintiffs. Oh, oh. Or that. The sharing of costs. Now, under the Court below's regime. And then you would have five, six different arbitrations going, and in each of those five or six cases, you would have, they could share, they could share the million-dollar cost of this expert. They could share the cost of the expert. And, of course, they get their attorney's fees back, plus reasonable statutory costs, plus potentially treble damages. The alternative, as the Court below held, is that the district court has to decide in the first instance, I'm not going to send it to arbitration because I think they need a class action. To make that determination, he first has to do a Rule 23 analysis. Would there even be a class certified in this case? Only 20 percent of putative classes are certified. And that's not an inquiry that the Court should be making. Ginsburg. Ginsburg. I'm sorry, but I don't think I got the answer to my question. And the arbitrator has now said, we have to have an expert. And the plaintiff says, the complainant says, I haven't got the wherewithal. And if I have six friends who bring individual arbitrations, that's nearly enough. So what happens then? The case ends? And it's not possible? And, as we said, they would be able to share an expert between multiple plaintiffs. But there is no guarantee in the law that every claim has a procedural path to its effective indication. This Court held in Eisen, for example, even though the Court acknowledged that it was a $70 claim, it could only be brought as a class action. But the plaintiff in that case said, I can't afford to do the notice cost. And the Court said, well, then the class is decertified, because the plaintiff has to put up the notice. The whole point of arbitration, of course, is that it expands the universe of claims that can be brought efficiently and effectively for small consumers. Kagan. Do you think that, if in your arbitration agreement you had a clause which just said, I hereby agree not to bring any Sherman Act claim against American Express, could your arbitration agreement do that? Under this Court's decision in Mitsubishi, I believe not. It couldn't, right, because we would say, no, there has to be an opportunity for a vindication of statutory rights. Is that right? Correct. And suppose that the arbitration clause said something different. Suppose that the arbitration clause said, I hereby agree that I will not present any economic evidence in an antitrust action against American Express. Could it do that? I think that would be subject to review under State unconscionability principles and would probably be struck down, Your Honor, just like any other provision that essentially prevents this type of argument. Well, even putting aside State unconscionability principles, wouldn't you think that our Mitsubishi case and our Randolph case would again come in and say, my gosh, this arbitration clause prevents any effective vindication of the right to bring an antitrust suit? Wouldn't you say that? I don't think Mitsubishi can be read that broadly, Your Honor. To the contrary, the whole point of Mitsubishi was that arbitration is an effective forum for vindicating Federal statutory rights. So you think that's the case. I'm sorry, go ahead. I'm sorry. Mitsubishi dealt with the very specific question of a waiver, a substantive waiver of your rights. Not with the procedures to vindicate those rights, as, for example, in the Weimar-Sugura case, where the Court said, well, you might have to go to Japan, but we're not going to get into the business of weighing the costs and benefits. So I just want to make sure I understand your answer, which is that you read Mitsubishi and Randolph as so narrow that you would say that the principle that they embody does not prevent American Express from saying you cannot produce, you cannot use any economic expert or any economic testimony in an antitrust suit. You know, I think the better place to handle that would be State unconscionability law. Whether the Court would want to expand the port of Mitsubishi to say that, it's not clear to me what the statutory justification for that would be, given that the Sherman Act — the question here, of course, concerns class procedures. And given that the Sherman Act was passed at a time when there were no class procedures and given that the Court steps beyond — Kagan. Well, my question is not about class procedures. It's about allowing economic evidence to help prove your claim. And you said no problem, even though it is, of course, true in the real world that to prove a successful antitrust claim, you need economic evidence. Correct. And you said that's fine, because you're going to read Mitsubishi and Randolph in such a way that it allows an arbitration clause to 100 percent effectively, absolutely frustrate your ability to bring a Sherman Act suit. I have no doubt that such provision would be struck down. I think the proper way to do that would be under State unconscionability law, which Section 2 specifically preserves. But if the Court felt the need to expand Mitsubishi in that narrow respect, that would still not help the Respondents here, who are saying that they should condition the enforcement of the arbitration clause on the availability of class procedures, which this Court held in Concepcion is fundamentally inconsistent with the purposes of the FAA. I think what they're saying is something a little bit different, which is that if you go — if you accept my premise that the arbitration clause could not say no economic evidence, what the Respondents here are saying is, well, now you have to give us the best economic evidence, and maybe that involves class procedures, maybe it involves something else. It could involve some other cost-sharing mechanism. But if the arbitration clause works to prevent us from sharing costs in such a way that we can produce that evidence, then once again we have a problem about completely frustrating the effect of the Sherman Act. Well, I think — I think not, Your Honor. I think we have to return to the fact that the only provision at issue here was the class action waiver. That was the only issue that they raised below. It was the issue decided by the Court. It was the issue on which this Court granted certiorari. And it's directly contrary to this Court's decision in Concepcion. I have no doubt that if there were provisions in a contract that essentially prevented a plaintiff from raising a substantive claim or from presenting evidence that they might have in support of that claim, that it would be struck down under State unconscionability principles or under Mitsubishi. But I don't think we can expand Mitsubishi into a free-floating inquiry for district courts into the costs and benefits of each case. They would have to sit down and say, well, what evidence is going to be needed in this case and how much evidence is going to be required? They would have to say, what are the document production costs? According to the court of appeals, they would even need to say, what are your chances of winning? Because, say, it's going to cost a million dollars, but you only have a 50 percent chance. Ginsburg. I thought that the only thing that the court of appeals said is you have to pay $300,000 minimum for the expert. The most you can get in treble damages is $5,000. It didn't go into all the other things that you were saying. But the court of appeals said, nobody in his right mind will bring such a lawsuit to pay $300,000 to get $5,000. And nobody in their right mind in Eisen would pay a million dollars in notice costs to get $70 on their claim. I guess you could have said the same thing under the Sherman Act before Rule 23 existed, right? Before there was such a thing as class action. Under that position. The same thing would have been true. If, indeed, your claim was so small that you can't pay an expert, as a practical matter, don't bring the suit. That was true. In fact, Congress, at the time of passing the Sherman Act, specifically considered adding class procedures and declined to do so. For the first four decades of the Sherman Act, there were no class procedures even allowed. Now, even today in court, as I noted, only 20 percent of cases actually get the class to certify. The whole point of arbitration, as I noted, is to expand the scope of claims, small consumer claims, that can be brought in an efficient and cost-effective manner. Do you think the nature of their underlying, their antitrust claim, is relevant to this? They're claiming that they were unlawfully compelled to enter into the contract, that they say, as a practical matter, precludes them from raising the antitrust issue. Does that make — does it matter? Well, a couple of points on that. They certainly weren't compelled to enter the contract. Lots of merchants don't take American Express. It was a voluntary choice on their part. But more fundamentally, the only provision that they have ever challenged in this case is the class action waiver. They have not suggested below that there was any problem with cost-sharing or other ways that they might deal with the specific question, how to present their case in arbitration. Ginsburg. In the A.T. Mobility case, the Court remarked that this was a — that the arbitration agreement had certain provisions that made it easier for the consumer to use the arbitral form. Is there anything like that in this arbitration clause? I'm sorry. I didn't quite follow that, Your Honor. A provision in the arbitration clause that makes it easier to use the arbitration clause. Yes. Where not some other consumer in another arbitration, not that sharing of the cost, but wasn't A.T. and T. Mobility going to pick up a good part of the tab of the cost of the arbitration? That's correct. There were provisions in A.T. and T. that the Court said would make small value claims easier to process. I would note that in Concepcion, the Court said even if small value claims could not be brought, it would still fundamentally change the nature of arbitration to insist upon class procedures. So I don't think that helps them in distinguishing Concepcion. One of the ways I've been thinking about this case is to think about arbitration. The whole point of arbitration is to have a procedure where you don't have cost. You have as an arbitrator an antitrust expert or the best in the class in the third year antitrust course in law school. And they cite reports and they're, you know, it's classic to have contractors sit in as arbitrators in construction claims just because it's cheaper and they know the price. So I was thinking that that's a substantial justification for your position. But your argument so far seems to say that doesn't make any difference. Even if they can't bring the suit in an economic way, the arbitration in an economic way, that's irrelevant. That's what I'm getting. That's what I'm getting from your argument. I did not mean to imply that, Your Honor. The key point is that it's up to the arbitrator in the first instance to find the most efficient and cost-effective way to resolve a particular claim. And it's not necessarily the case that complicated, that huge numbers of documents — plaintiffs said we'll need 5 million documents and we'll need a very, very expensive expert, and they got an affidavit from a very, very expensive expert saying this is what I would charge to do this. The whole point of arbitration, of course, is that its informality actually expands the universe of claims, of small value claims that can be brought effectively. Kagan. Mr. Kellogg, are you suggesting that you can win an antitrust suit in arbitration without presenting economic evidence of such things as monopoly power, antitrust injury, damages? How could somebody do that? No, I acknowledge that they would probably need a report in this case. And why? I mean, I could do it. I could be your arbitrator. I know exactly what I'd do. I'd ask for five things which will be admitted, and one thing that's going to be difficult for them to prove. I don't see why an expert in antitrust would have to have this enormous report. Well, perhaps I'm conceding too much to Justice Kagan, but in this case, if you look at the complaint, the market definition that they're seeking to establish is, if I might put it somewhat gerrymandering. It essentially consists of the market definition that they're seeking to establish. If you want to all argue that stuff, then I guess maybe they're right, maybe you do need experts on that. I don't know that we want to get into this, but I just want to know if you want to concede that there's no way to win this case in arbitration unless they spend $300,000. I did not mean to concede that at all, Your Honor. The whole point of arbitration is the informality and the speed of the procedures. And in addition, to the extent that there does need to be some sort of safety valve, of course, Congress can deal with that question. Congress recently in the Dodd-Frank Act said, in certain circumstances, we're going to allow the Consumer Financial Protection Board to determine whether class action waivers will be permitted. But obviously, there's nothing, either in the FAA or in the Sherman Act, that would justify such an inquiry here. Kagan. Kagan. Well, Mr. Kellogg, could I go back to Justice Alito's point, because I'm not sure I quite understood your answer to it. Essentially, the claim here, right, is that this is a party with a monopolistic power such that, and this is just the plaintiff's allegation, it may or may not be true, but they say that American Express is using its market power to impose particular contract terms. And they have a tying thing, but it could just as easily be the case that American Express could be using its economic power to impose terms essentially making arbitration of antitrust claims impossible. And why shouldn't we understand this problem as connected to the very allegation that's being brought, that, you know, how is it, how is it going to be possible in a case where there's a monopoly power able to impose contract terms that you can create an arbitration clause which essentially prevents that from being challenged? Well, there is a separate issue below which the Court did not reach about whether the arbitration clause itself had been improperly imposed. But the question before the Court has to do with the class action waiver, which this Court in Concepcion said there's no statutory basis for the courts to preclude application of that waiver. It's also, we create a completely unworkable inquiry at the outset of litigation in order to determine whether to refer a case to arbitration in the first place. And it's unnecessary because State law unconscionability can deal with contracts of adhesion or unfair terms. The arbitrator in the first instance can deal with how to cost-effectively arbitrate the claims in issue. Did American Express say, as Justice Breyer suggested, that, well, we will concede A, B, and C, so the only issue on which you need proof is D? As I understood it, American Express never took the position that it would concede  Well, Your Honor, we took the position, even in district court, that they could pool their resources and share the cost of the claim. I'm not talking about pooling with other single merchants, bringing single arbitrations. I'm asking whether American Express, so here's the complaint, it says, I have to prove relevant markets, et cetera, and did American Express take the position, no, you don't have to prove all that? I think that's what Justice Breyer was suggesting. There's only one thing that's really in controversy, and the rest we could stipulate, but I didn't see anything in all the time this case has been in the courts on American Express's part to say that we are not going to demand the full address proof. Well, that's not actually correct. We did not say that we're going to relieve them of their burden of proof on any issues, but we did say, and the district court agreed with us, that the arbitrators are capable of dealing with these claims in an efficient and cost-effective way that would allow the plaintiffs to bring them. I suppose that American Express wouldn't have had to agree to arbitration at all, right? They could have just said, you know, you have a cause of action, you sue us in court. Right? They could say that legally. We could. We could. And until Rule 23 was adopted, that would mean, you know, if you had a small claim, tough luck, right? De minimis non curat lex. If it's just negligible, it's impracticable for you to bring a Federal claim. And that would not violate the Sherman Act, would it? Correct. That very issue was present in the Eisen case. I'm a little confused about this business about pooling resources and whether it's prohibited or permitted. Tell me exactly what your position is on that. Our position is that multiple claimants in arbitration could share the costs of an expert. Well, it seems to me that I don't see how that concession is at all needed by the other side. I mean, let's just say they have a trade association or something. They can all get together and say, we want to prepare an antitrust expert report about what American Express is doing, and they do. And then presumably one of them can use it in the arbitration. Any problem with that? That no problem with that, and that's absolutely right. But the plaintiffs below said that wasn't good enough. They said we need the aggregate damages provided in a class action to make this worthwhile, because if we're just going to essentially get costs of the lawyer. But they could borrow the money from a lawyer instead of from the trade association, right? Well, or from a hedge fund, which increasingly finances. Well, again, that doesn't seem too difficult. You either have your trade association or you have a big meeting of all of them and say we need to pay for this expert report, and once we've got it, you know, I'm going to represent each of you individually in individual arbitrations, and I'm going to win the first one, and then the others are going to fall into place, and they'll get a settlement from American Express that's going to be the – satisfy their concerns. Absolutely right. Mr. Sotomayor, you have no problem with that. I have no problem with that, and that's why this case is about the class action waiver. And, Mr. Ferrer, if the – I'm sorry. Just to follow up on a brief thing, is the – is there collateral estoppel effect in the arbitration that would be applied to such a court? That is unclear. I've tried to look at that issue. You know, even in court, nonmutual use of offensive collateral estoppel is sometimes at the discretion of court. I couldn't find anything in the arbitration context. Just to be sure I understand it, you're saying that it does not violate the confidentiality agreement of this clause to all get together and produce one report? Correct. Okay. And if you look at actually the affidavit put in by the plaintiff's expert, and you look at all the things he says I need to study in my report, they're all issues in common. They're not specific to an arbitration. Did you say that below as well, that the confidentiality clause does not sweep so widely as to prevent this? Because clearly the court below thought that the confidentiality clause did sweep so widely as to prevent this. The Second Circuit did say that after we suggested that they could pool resources, and we think that was an indication of the court's, shall we say, urgency to strike down the class action waiver. Nobody challenged the confidentiality provision below. So, but you're saying the confidentiality provision would not apply in that circumstance? It would not apply. We took that position below. If I might reserve the remainder of my time. Thank you, counsel. Mr. Clement. Mr. Chief Justice, and may it please the Court. This case is about the scope and continuing existence of a doctrine that has been a feature of this Court's cases and a necessary corollary of its willingness to extend arbitration to Federal statutory claims, the Vindication of Rights Doctrine. Ever since this Court, 30 years ago roughly, got in the business of extending arbitration to Federal statutory claims, it's used the effective vindication doctrine as an assurance that Federal statutory claims would not go unvindicated just because of the arbitratable forum. And so if you look at this Court's cases, they stand for a simple proposition. When the choice is arbitration or litigation, surely the FAA favors arbitration, and it's no threat to the underlying statute, because the underlying statutory claim is vindicated in the arbitral forum. I don't see how a Federal statute is frustrated or is unable to be vindicated if it's too expensive to bring a Federal suit. That happened for years before there was such a thing as class action in Federal courts. Nobody thought the Sherman Act was a dead letter, that it couldn't be vindicated. And I don't see why it's any different when you transpose the situation to the arbitration situation. Clements. Justice Scalia, let me take on the premise and then also say where really the concern comes in for the differential treatment. I would take issue with the premise, which is, sure, there wasn't a Sherman Act — there wasn't a class action rule 23 back when the Sherman Act was first passed. But there were procedures in, like, Joinder that allowed for multiple claims to be litigated together. There were not confidentiality agreements that came in and limited your ability to share information from one claim to another. And, of course, back in the good old days, you didn't necessarily need a $300,000 expert to bring a Sherman Act claim. But what I think is the problem is when you have a difference, and that is the assumption on which this case comes to the Court, where you could vindicate this claim in court, because there are mechanisms to share or shift costs, and you cannot vindicate them in the arbitration because of a combination of features of the arbitration agreement that prevent any sharing or shifting of costs. Breyer. Before you get to that, I have two questions. One is on the point you've just made, because I agree, I understand it is fairly well established, this doctrine, but I don't see quite how it works. Suppose there's a TILA claim, a Truth in Lending Act, you know, something like that. And the claim is a fairly – it's worth about $10,000 or so. And so the plaintiff says you violated the Act payment of $10,000. Now, he happens to come up with a theory that is really far out. And the more far out the theory, the harder it is to prove. And the harder it is to prove, the more you need expensive experts. And do we go case by case, saying, you know, where you have a really weird theory that's going to require 17 experts and endless studies, you don't have to have an arbitration claim or you don't have to follow it in this instance, but everybody else does? Now, is that something, in other words, we're supposed to look at case by case, which would produce the odd result I suggested? Or do we do it by categories? How does the doctrine work? Well, you could do it by category, and I suppose you could treat antitrust claims differently, but I think there's an answer that's already built into the Court's case, which is Randolph, and it's putting the burden on the plaintiff to make a nonspeculative showing. And in the case you've described, I would think you would say, boy, that's speculative. You know, you don't need that. Breyer, because I work with my own hypothetical. I'll have a far-out case, but yet not quite speculative. And in other words, what I'm trying to suggest is it's an odd doctrine that just says plaintiff by plaintiff, you can ignore an arbitration clause if you can get a case that's expensive enough, and there we are. I haven't seen it work, and I haven't seen enough to know how it does work. And I guess you haven't either, but I'm concerned about that. Well, don't be too concerned, Justice Breyer. First of all, if you look at the cases where the doctrine has been applied, it's largely been in antitrust cases. The First Circuit Christian case is an antitrust case. And I don't think that's an accident. I mean, if you look at the Hovenkamp amicus brief, it makes clear that you just can't bring this type of claim without an expert. Well, that doesn't seem right to me. Now, Hovenkamp would be the person I'd hire as the arbitrator, so surely he does know, or Filarita, a blessed memory. And they're under the instruction to get this done cheap. Well, I think that might be possible. That might be possible. Because it's only the question of damages that's tough here, because if you don't have a, you know, the double, there's only one monopoly profit at the two levels, da, da, da, and we don't need to go through that. But I can think of a way of getting it done pretty cheap. But regardless, your expert here didn't talk about the cost of arbitration. He did use the word once. But as I've read pages 88 through 92, it seemed to me he was talking about the cost of litigation, not the cost of arbitration. And I wouldn't proceed necessarily with all those reports he does to impress the jury or even the judge. This is Filarita. You don't need to impress him. And so, so, haven't, hasn't the Second Circuit looked, assuming your doctrine's in place, to the wrong set of costs, the cost of litigation, even though they use the word arbitration? That isn't what your expert told them. Well, I mean, Justice Breyer, none of us can know for sure what Professor Arita would say. But we know what Professor Hovenkamp says. And he says to bring these claims, you need an expert. Now, let's — In arbitration or in court? He says in arbitration or anywhere. He assumes that anywhere you bring these claims, you're going to need a more competent expert. Well, then, does he take into account the fact that the arbitrator can be him and, moreover, could, in fact, work under an instruction, keep these costs down? And what I would say, Justice Breyer, is the place for that debate, if it were going to take place, was in the district court. Because we made our case, as Randolph requires, and it was a nonspeculative case. We said it's going to cost $300,000 to $500,000 or even a million dollars to get a market power expert. They didn't come back and say, no, in arbitration, I think you can do it for 50,000. No, that isn't the point. If I were doing this offhand, I would say everything is conceded but for one thing. Since there is no double monopoly power, there is only one monopoly power at the two levels which can be exercised. The only way the person is damaged is if, in fact, you've raised entry barriers. So you'd say to the plaintiff, how are you going to prove that? And then you'd read it and submit a report. Now, I'm not saying this is the right way to go about it. All I'm saying is it's hard for me to figure out, on the basis of that affidavit, which talks about courts, why this has to be so expensive. So what do I do? I think what you do is you, with all due respect, fault Petitioners for that, because we put in that report, they could have criticized it exactly the way you are and we'd have a different case. But they argued before the district court and the court of appeals just what they argued to you, Justice Kennedy. It doesn't matter if you can do it. It doesn't matter if it's too expensive. We don't think this doctrine exists or we don't think it extends to this kind of cases. And having put their money on that extreme position, that the effective indication doctrine doesn't exist, I think it's a bad case. And that's why I'm asking you. What they chose as the remedy here was sever the arbitration clause if you want, it seemed to be, and go to court. All right. Now, I don't know where that power comes from. So if you were going to improve this contract in the direction that you would like, why couldn't you sever the part about the confidentiality, or why couldn't you require you have some awfully big merchants, like, I don't know, probably you have maybe Costco, maybe Wal-Mart, maybe, you know, these people are not without money, though you're a client, maybe, but go get this contribution. Go for it. There are many ways you could treat this particular set of words in the arbitration clause, short of severing it entirely. And what about that? What's your view on that? What do you think? Well, our view on that is, you know, the Court is balancing two things here. It's trying to apply the effective indication doctrine. But it's also trying to honor the principle of this Court that you treat the parties to the bargain that they have committed. Now, if they would have come in and said in the district court, which they didn't, that we'll get rid of the confidentiality. They said you could share costs. But, you know, the confidentiality was the problem. It was the problem the Second Circuit saw. You can look at 92A, the petition appendix, and they didn't petition on that issue. So I don't know how they get to say, well, the Second Circuit was wrong about that, but isn't that a shame? I mean, if they thought that was wrong, they should have petitioned. And that just shows you these issues were in front of the Court. Now, I'm you know, you, I don't understand. You think they could have appealed on that issue? Sure. I don't think this Court would have necessarily granted it because it's not very cert-worthy. But it's also, I don't know how they can keep that issue in their back pocket and then say, well, we got cert on this cert-worthy issue and now we have this factual finding where the Second Circuit held that the confidentiality agreement precludes the sharing of this information from arbitration to arbitration. Scalia, let me ask you, your effective vindicability principle depends upon a comparison with what you could do in court. It doesn't, Justice Scalia. It doesn't? It doesn't. It's a simple comparison of the necessary unrecoupable costs of bringing the claim in arbitration compared to the maximum recovery. Yes, but if you couldn't do it, if you couldn't do it either, even if there had been no arbitration agreement, how could the arbitration agreement be harming you? I don't understand that. If you have a claim, Justice Scalia, that can't be vindicated in arbitration or in court, that claim is not going to show up. Or in court. You have to compare it to court. If you couldn't do it in court, you don't have to be able to do it in arbitration, it seems to me. With respect, Justice Scalia, you don't have to make that comparison part of the test, because the cases that can't be vindicated in either place won't show up at the courthouse door. So once you show up at the courthouse door, you've got a plaintiff's lawyer, they may be crazy, but you have a plaintiff's lawyer that thinks, I can do this in the litigation system. And so at that point, the only question is, all right, I think I can do this in the litigation system. If the only thing that's precluding me from doing it is this arbitration agreement, so this arbitration agreement is not operating as a real arbitration agreement, it's operating as a de facto, as-applied exculpatory clause. If they can make that showing, then the option is not arbitration litigation. Kennedy, you know, it's saying that there's an alternate mechanism for resolving disputes. It's called arbitration. And arbitration does not necessarily, or even as a matter of fact, often, as a practical matter, involve the costs and the formalities of litigation. And God bless it, Justice Kennedy, when it does that and it can effectively address claims that can't be addressed in the litigation system, that's exactly what we want arbitration to do. But there are some cases where the arbitration system, not generally, I mean, if you have the kind of pro-vindication agreement you had in Concepcion or that Sovereign Bank has that we mentioned in our brief, then you can vindicate these claims in arbitration. But when you have a specific arbitration agreement that has a variety of clauses that don't allow for any mechanism to shift or share the costs, so you know it's not litigation versus arbitration, of course we'll go with arbitration, it's litigation or nothing. In those circumstances, this Court has always said that we'll prefer litigation. Kennedy, I would say that, I mean, shame on them, but I would say that, I mean, shame  I would say that, I mean, shame on the Court of Appeals, that's what we're asking. Now, to be sure, they took a more rigid view below, so we don't have much of a record. Well, and Justice Kennedy, I would say that, I mean, shame on them, with all due respect, because there was an opportunity in the district court to make an apples-to-apples comparison, and they could have said, no, $300,000 is way off, you can do this for $25,000, and here's how. But they didn't make that showing. They said, you know, we don't think the effective indication doctrine applies in these circumstances at all. Roberts. Well, it's a little much to expect them to come back and say, oh, no, no, you don't need to prove all this. The only thing you've got to prove is it's going to cost you $25,000. I mean, that's an odd position to put them in. Well, I don't think it is, Mr. Chief Justice. They don't have to say, you know, they don't have to tell us how to prove our case for the lowest possible price. They just have to show us something that will allow us to vindicate our claim. There's no authority that I could find for the proper – I mean, if, in fact, it costs you $10,000 to buy the arbitrator – system, you know, you buy the system. I don't see – sorry. But, I mean, you know, hire the – whatever it is. If those are obstacles, it's pretty well established, I think, that that arbitration is not something that you can use to vindicate the Federal claim. And the part that's bothering me about this, though, is that those aren't the obstacles. It's just you brought a very expensive claim. And the real problem here is the reason they can go into court is they can get a class action in court. And this Court has said you can't get the class action in arbitration. There we have it. So the question in my mind is, well, is there a way that some of the beneficial aspects of class action can be used in an arbitration that does not formally have a class action? And there it seems yours is a good case, because a lot of them can. You say, well, the one part that can't is getting this private information. So maybe we should send it back and say, well, why do you need the private information? On a good theory of antitrust, you're going to show that the price of the tied product was higher than what it would have been had the entry barriers not been raised from the tie. That's a general entry question, which I don't think you need private information from them to answer. But that's the end. Now we're really into the depths of the merits. So I thought of sending it back and saying, let's let them explore this kind of thing about other ways of trying to get some of these advantages of class action into your you're going to say I'm too far out in this. Clements, I could write a treatise on it. Clements, But what I was going to say is, look, take a step back. One of the great things about the effective indication doctrine is it gets the incentives rights. It gives companies incentives to draft clauses that will allow for the maximum vindication of Federal rights. And so there are lots of clauses out there that would allow for even this claim, because they have cost shifting of expert costs or they don't have confidentiality agreements or they'll waive the confidentiality. But maybe they don't. Scalia. Suppose this class could not qualify for certification in Federal court. Are you asserting that there is some arbitration principle that allows you to create some new class? Clements, No, Justice Scalia. Scalia. So you have to make a comparison to what can be done in Federal court, don't you? Clements, No. It's not part of the inquiry, because if you're presenting the inquiry. Scalia. It isn't? So that any class that the arbitrator thinks is okay is required? Clements, No. It's just that if by virtue of showing up in court and saying I want to litigate my claim, the lawyer has already made a judgment that I can vindicate it in Federal court. Maybe it's because of class action. Maybe it's just because of joinder. Maybe it's because there's no confidentiality rule in the Federal proceedings so it can bring a lot of these claims. Maybe it's a difference in collateral estoppel. Whatever it is, that lawyer has already spoken that I can make this claim work in litigation. Scalia. But he wants the class. What he wants in the arbitration is the ability to sue on behalf of a class, doesn't he? Clements, That might be what they most want, but they don't get that. They just get some way to vindicate the claim. And if this had a cost-shifting provision so that the extra costs were shifted, that would get the job done. That's the Sovereign Bank example we talk about in our brief. There are more than one ways. We're not trying to get a guarantee for class treatment in one form or the other. Scalia. Is that what you ask for below anything, class action or compensation or whatever? Clements, In all fairness, we focused below on the class action, because that's what I thought. That's what I thought this case was about. What's the question presented, anyway? Clements, Well, don't just look at the question presented. Look at the opinion below and look at 91A and 92A. The questions that the Second Circuit addressed, they've Scalia. Whether the Federal Arbitration Act permits courts invoking the Federal substantive law of arbitrability to invalidate arbitration agreements on the ground that they do not permit class arbitration of a Federal law claim. Now, you're saying that whether they permit class arbitration is not going to be decided on the basis of whether you could certify a class under Rule 23, but just what? And if it does depend on that, what is the Court supposed to do before it can give you your claim? It has to decide whether this class would be certifiable, wouldn't it? Clements, No, it would not, Your Honor. Scalia. It's a very complicated procedure. Clements, It just has to answer the question, is there a problem with the arbitration provisions? There's something with this specific agreement that precludes this claim going forward. Here, it's a combination of no class arbitration, no way to shift costs because they don't provide cost shifting, and no way to share costs because of the confidentiality. Whatever they put in the question presented, they can't make the Second Circuit's holding that the confidentiality provision blocks the sharing of information to go away. They're stuck with that. Roberts. Tell me how the no sharing of information confidentiality, how does that work again? You can't, if you're a trade association, get together and say, I think we should have a study of Amex's whatever, and then you put together the study, and then one of your members says, you know, that's a good study, I'm going to go to arbitration. They can't do that? Clements, They could do that much, Mr. Chief Justice. The critical point at which the confidentiality provision creates a practical problem is you're trying to get all the information, you're trying to get a single expert report in order to share the costs, and you're trying to do not just the market survey, but do a damage calculation, have a damage formula, because when you have a market like this, where the allegations are, they've distorted the market, so we can't rely on the market price. We need to know the sales volumes of all the individual stores. Their confidentiality agreement protects that and doesn't allow that to be shared. That's not that unusual. This Court and Stolt-Nielsen and Concepcion both remarked that one of the features of arbitration is you generally keep it confidential. And that's something that the Second Circuit said, because of that. Roberts What if you do it, is that's just part of your trade associations. They think this is — you know, they're not talking about particular arbitration or anything. They just prepare a report, and then once you see the report, you say, my gosh, I had no idea, and then you file your claim for arbitration. Clements, With all due respect, Mr. Chief Justice. Roberts It seems to me my point is simply that there's no sharing confidentiality. It seems like an awfully amorphous provision that would be very difficult to enforce. Clements, Well, I mean, I don't think it's that difficult, Mr. Chief Justice. Certainly, cost shifting is not difficult, and there are other ways to solve this problem. But the Amex agreement forecloses all of them, and the question for this Court is, do you say, well, huff, or do you say what you said every time you've confronted this problem? The effective indication doctrine provides the solution. Thank you. Roberts It will afford you some rebuttal time. Mr. Stewart. Oh, no, we won't. You should have said, I accept, very quickly, you know. Just being generous this morning. Mr. Stewart. Stewart Mr. Chief Justice, and may it please the Court. At the beginning of the argument, Justice Kagan asked whether a pure exculpatory clause, a provision in a contract that simply said, we promise not to seek relief under the arbitrate under the antitrust laws, period, would be enforceable. And Mr. Kellogg replied that it would not. And I think the unenforceability of such a provision would not depend on any analysis of what was likely to happen if the suit was brought in court. That is, a pure exculpatory clause could be set aside and the plaintiff could still lose for any number of reasons. The plaintiff could be denied class certification and decide it's uneconomical to proceed with an individual suit. He could lose on a threshold ground like the statute of limitations, or he could lose on the merits. But the unenforceability of the pure exculpatory clause wouldn't require the Court to make a comparison between being kicked out of court on that basis and what would likely happen if the suit were able to be brought. And we would submit that the same mode of analysis applies when the arbitration agreement can be shown to have the same practical effect as an exculpatory clause. That is, if it is the case that, given the amount of money at stake, the arbitration procedures specified in the contract, and the modes of proof that would be necessary in arbitration, if it can be shown persuasively by the plaintiff who bears the burden that no reasonable plaintiff would find it economically feasible to proceed, then the arbitration agreement can't be enforced. And if it's not, then it can't be enforced. Scalia, would that be the case even before Rule 23 was adopted? Yes, and it would be the case. Even though you couldn't vindicate it in the Federal courts, you must be able to vindicate it in arbitration. You – the question would be whether the arbitration agreement could be enforced. And before Rule 23 was adopted, if there had been a pure exculpatory clause, it would have been unenforceable. And we're not even talking about a pure exculpatory clause. I'm talking about the mere fact that as a practical matter, it's impossible to bring it in arbitration in a context in which it is also impossible to bring it in Federal court. And you would say still, you must permit it to be brought in arbitration, even though it can't be brought in Federal court. In the same way that we would say a pure exculpatory clause would be invalid and unenforceable, even if it were clear from the plaintiff's complaint that he was not entitled to relief on the merits. Kagan, what's your question? Kagan, isn't that also consistent with the way the Court addressed the issue in Randolph? Because what the Court said there was it might be that these arbitration fees are prohibitive. And if those arbitration fees are prohibitive, then this doctrine kicks in. And it didn't look to say, well, let's compare how these fees relate to whatever costs you would wind up with in litigation. It just said if the arbitration fees are prohibitive in such a manner that it prevents you from vindicating your Federal claim in arbitration, that's enough. That's correct. And I would make two real-world cases. Scalia, what are the arbitration fees, not lawyers' fees? Do they include lawyers' fees? No, the attorneys' fees would be recoupable under the subject of law. Scalia, so I don't know, what are you comparing it to in court litigation? We're not really. Filing fee? No, I think we're not comparing it to anything. That is, our position is in determining whether the arbitration agreement has the same practical effect as an exculpatory clause, we ask could any reasonable plaintiff proceed under the terms and conditions that are set up. And if the answer to that is no, then the arbitration agreement is unenforceable. Now, I'd make two real-world points, one of which Mr. Clement has already alluded to. The first is the only cases that are going to wind up in court are those in which the plaintiff at least believes that it would be feasible to vindicate the claim in court. And so they are likely to be those in which there's at least a potential difference between the outcome in court and the outcome in arbitration. The other is, even if a plaintiff believes wrongly that he can proceed in court through a class action mechanism and class action certification is denied under Rule 23, presumably at that point the plaintiff is going to give up, and the outcome at the end of the day is going to be the same as if the arbitration agreement had been enforced. This is exactly. I found no authority for the proposition that what hinders the arbitration There's plenty of authority. You can't make the person go to arbitration if the fees involved are too high, because he's blocked. But you're quite in advance over that. You're saying the thing that keeps him out is his own theory of the wrong, which will involve hiring a lot of experts and others. Now, once that's adopted, it seems to me in practice we have reversed in many, many cases the proposition that you can in fact require Federal causes of action to be arbitrated. Because all you have to do to get arbitrated out of the arbitration is to allege a theory of your case which is hard and complicated to prove. Now you're back in court. Now, that's a significant erosion, it seems to me. So I want to know if you have any standard there, if we're just supposed to accept that, if in fact you're trying to reverse in practice what was the holding that you can arbitrate these Federal causes of action. What's going on here? An addendum to that is if you're going to convince me, which you might, that well, that's okay, do it, do it, do it, is it a possible remedy to monkey with the arbitration clause and provide for a sharing of costs, say, if you win, the loser will pay the cost of the arbitration, which is a much more pro-arbitration way than just throwing it out entirely. That's a long question. Did you see what I'm driving at? Let me start with your last question and work backwards. It is possible, and it sometimes has happened in the lower court cases, that a plaintiff will come into court and say, I can't proceed through arbitration because the arbitral fees are too high in relation to my likely recovery, and the defendant at that point will say, we offer to waive the fees, or we offer to pay your share of the arbitral fees, and a court will be persuaded that given that consensual modification of the contract, it is feasible for the claims to be brought in arbitration, and the plaintiff is kicked out of court. Now, this is consensual. This is something that the court has done at the company's behest, and it would be a different question whether the court could do that over the company's objection. But another thing that the company could do is put in a severability clause in the contract that would specify what results should obtain if one provision of the contract were held to be invalid. I guess another thing I would say in response to your question is, we do have one data point, the First Circuit's decision in Christian, which I believe Mr. Clement referred to, in 2006, which essentially held on facts similar to these that the arbitration clause as written was not enforceable because the cost of the expiration of the arbitration would be the same as the cost of the arbitration. So the question is, if the arbitration clause is not enforceable, then why would the expert fees in an antitrust case would dwarf any potential recovery, and we haven't seen the floodgates open? The last thing I would say is, if this is the concern, Petitioner's proposed rule really doesn't match the argument in its favor. That is, Petitioner is not just arguing for a rule that would cover cases in which the claimant has a $500 filing fee and the amount of the claim at stake is $200. So it's absolutely apparent on the face of the contract that the claim can't be brought. The agreement is still enforceable, and the plaintiff is deprived of his day in court. The other thing I would say about Petitioner's argument is that the challenge to the Second Circuit's decision has really changed drastically since the CERC petition was filed. That is, the Second Circuit took it as essentially undisputed that the cost of the expert report would render it economically infeasible to proceed in arbitration. And it took the further step of saying, therefore, the arbitration agreement is unenforceable. Now, the CERC petition challenged only the therefore part of the Second Circuit's analysis. There wasn't a suggestion that the Petitioner intended to challenge the antecedent determination that these claims couldn't feasibly have been brought in individualized proceedings. And I think as Mr. Clement said, the likely reason is that wouldn't look like a CERC-worthy issue. That sort of fact-specific inquiry wouldn't seem like a wise use of this Court's resources. So having gotten CERC granted on the important legal question of whether the inefficacy of arbitration procedures is a basis for invalidating the agreement, Petitioner is now spending a great deal of time arguing that it would in fact have been feasible to pursue these claims through individualized arbitration. And one thing we would say in response, as Mr. Clement said. Scalia, they didn't get CERC granted on that question at all. As I pointed out before, they got it granted on whether the mere fact that the arbitration agreement did not permit class arbitration renders it invalid. They did get CERC granted. Scalia, that's what I thought the question before us did. They got CERC granted on that question, but neither the question as so framed or the challenge to the Second Circuit's factual determination that these claims could not feasibly have been brought in individualized arbitration. Ms. Stewart, is it the arbitration agreement is a one-on-one, right? They can't or can they have? Can they have 12 similarly situated people, not a class, join in the arbitration or is it one-on-one? That's correct. Which is correct? It is correct that it has to be one-on-one, that the agreement requires only one. And even in the days before we had Rule 23, and if you were bringing a suit in Federal court, you could have multiple plaintiffs joining together. That's correct. The agreement prohibits even the types of jointer mechanisms that might have been available when the Sherman Act was passed. Thank you, counsel. Mr. Kellogg, you have rebuttal time, 6 minutes. Thank you, Mr. Chief Justice. Let me focus on what the court of appeals held below at 3A of our appendix. The court said the only issue before us is the narrow question of whether the class action waiver provision contained in the contract between the parties should be enforced. That is the question on which we sought certiorari. That is the question that the court granted. It is Respondents who have now tried to rewrite that question by talking about other possible ways of vindicating their rights that they claim are foreclosed, that they  And that's the issue here. This is not. Kennedy, but well, do we have a factual record? Suppose I think, based in substantial part on Justice Breyer's suggestion, that we could have an arbitration that's effective and we could have a trade association prepare a report and we could do one arbitration and then see if it applies to others. I don't think you need a factual record, because as Respondents acknowledged, the burden is on them to show that the arbitration-specific costs would preclude them from pursuing their claim. And they have not done that by putting in an affidavit saying, well, in litigation, we'd have to do get 5 million documents and spend $300,000 processing them and get an expert report, which could cost up to a million dollars. That is not. Breyer's question, the answer is yes, a class action waiver can be enforced. Correct. Now, what are the circumstances here? The record leaves us uncertain. We remand it for further consideration of what they are. Well, the Court could certainly base that on. That isn't the issue. They decide whether it can be enforced. They decided whether you could, whether the whole arbitration agreement could be enforced. The holding of the court of appeals is the arbitration cannot be, agreement cannot be enforced because it has a class action waiver. That is clearly reversible error. I don't even hear. It was because Judge Fuller said, I have been instructed by the Supreme Court that I may not require class arbitration. That's that's, and she was bound by our decision that a court can't order class arbitration, isn't that correct? Because that was not an option for her. But the Court also in Concepcion said you can't condition the enforceability of an arbitration agreement on the availability of class procedures, and that is what the court below violated. So the decision below has to be vacated. I do not think you should remand for a detailed factual showing on just how they are going to vindicate their rights in arbitration, because most of those questions, what evidence is required, et cetera, are for the arbitrator in the first instance. That said, we may, we did respond to their showing below. We did not put in a dueling affidavit saying, no, in litigation you would only require a $200,000 report or a $25,000 report. We said, that's irrelevant, because we're talking about arbitration-specific costs, and there's lots of ways that they can proceed with their claims. One is by sharing the costs of an expert, and they specifically rejected that. They said, even if we could shift the costs of the experts to the other side, that wouldn't be good enough, because then all we'd be doing is expending a bunch of money to get it back. We need aggregated damages of the sort available in class to it. Breyer. But I don't know what to do with that. I, then you just said what I thought, that the expert talked about litigation costs, not about arbitration costs. How is that handled? That is correct. That is how I read, that is how I read the report. And certainly with an expert arbitrator. You said you waived that point, whatever, however it is. You waived it, never raised it. Court of Appeals took it as if it were arbitration costs. You never said that. No, no. We waived. We argued that all along. In fact, I can refer the Court to page 27 of our report. The Second Circuit never said anything about this is what it would cost in court. The Court of Appeals said this is what it would cost to prove this kind of tying claim. It didn't say one word distinguishing what it would cost in litigation from what it would cost in arbitration. It was simply what it was going to cost. We did, in fact. But let me answer Justice Breyer's question first, page 27 of our Court of Appeals report. Scalia. I'd like to hear the answer, if nobody else. We specifically said the Declaration of Merchants expert is similarly unillumining as he, too, studiously avoided projecting the cost for an individual arbitration of these disputes. So we did argue against that point. This is not an exculpatory clause. The Court has made clear that a class action waiver is not an exculpatory clause. The Court has also made clear that you cannot assume that the arbitral forum will be inadequate to vindicate Federal substantive rights. And they cannot now change the nature of the question presented by arguing that, well, there should have been another provision to allow, specifically allow, cost sharing, or specifically allow cost shifting. Kagan. Well, Mr. Kellogg, it does seem like both of the parties have changed what they're saying a bit. And, you know, if this case is presented to us, was presented to us in the first instance, that the premise was that going to arbitration would not provide an effective way to vindicate the claim, and now people are saying different things about the necessity of an expert, it suggests that the premise on which this case was presented to us was not quite right. I don't believe that's the case. The premise on which the Court accepted the case, presumably, is that the decision below, which conditioned the enforceability of the arbitration agreement on the availability of class procedures, was wrong under Concepcion. Thank you, counsel. The case is submitted.